WILLIAM H. H. STEVENS, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 9, 1896.

1. **Railroads**: NEGLIGENCE: FLYING SWITCH: PUBLIC AND PRIVATE GROUND. A flying switch on private grounds of a railroad is not regarded as a movement of great danger, but at a public crossing it is negligence of an aggravated character.

2. ———: ———: PUBLIC CROSSING: CONVENIENCE. Considerations of mere convenience will not permit a railroad company to declare what shall or shall not be dangerous in the operation of its trains at a public crossing.

3. ———: PUBLIC CROSSING: CONTRIBUTORY NEGLIGENCE. As a general rule contributory negligence is for the jury, but the action of an injured party on a public crossing may be such as will warrant a peremptory instruction against him.

4. ———: ———: ———. Before venturing to pass over a railroad crossing the passenger should look and listen, and this duty continues until the dangerous locality is passed; and a failure to do so is contributory negligence.

5. ———: ———: ———: EVIDENCE. The evidence in this case tending to show that a reasonably prudent man might not have looked for the danger producing the injury was properly submitted to the jury.

6. ———: ———: PUBLIC STREET: APPELLATE PRACTICE. In this case the place of injury was found by the jury to have been used and traveled as a public highway for more than ten years prior to the accident, and such finding removes that question from the consideration of the appellate court.

7. ——: ——: CONTRIBUTORY NEGLIGENCE: PASSER'S INTENTION. The fact that a passer injured on a public crossing intended to pursue his journey onto the company's private grounds can have no bearing upon the merits in an action to recover damages for the injury.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, JUDGE.

AFFIRMED.

*Wm. S. Shirk* for appellant.

(1)   Plaintiff, Stevens, must be treated, not as a person crossing or about to cross a railroad track, at a public crossing, but as a trespasser.   He fully admits that he was not on or near the track on which he was injured, for the purpose of crossing it, but for the sole purpose of walking east, through the railroad yards, toward his home.   He was not, therefore, entitled to warning or signals.   *Payne v. Railroad*, 31 S. W. Rep. 887; *Shaw v. Railroad*, 104 Mo. 648; *Barker v. Railroad*, 98 Mo. 50; *Williams v. Railroad*, 96 Mo. 275; *Rine v. Railroad*, 88 Mo. 392; *Hyde v. Railroad*, 110 Mo. 272; *Maxey v. Railroad*, 113 Mo. 1; *Harris v. Railroad*, 40 Mo. App. 255.   (2)   Even if treated as being at a place he had a right to be, he was unquestionably guilty of such contributory negligence as defeats his action.   He took no care for his own safety, and only glanced around to see what the hallooing and noise was about, as the cars struck him.   Under such circumstances he can not recover.   *Hayden v. Railroad*, 28 S. W. Rep. 74; *Kelsay v. Railroad*, 30 S. W. Rep. 339; *Payne v. Railroad*, 31 S. W. Rep. 887, and the older Missouri authorities cited and affirmed in these cases; *Smith v. Railroad*, S. C. Ind., decided April 12, 1895, not yet reported; *Meyers v. Railroad*, 24 Atl. Rep. 747; Beach on Cont. Neg., sec. 182; *Kwiolskowski v. Railroad*, 70 Mich. 551.   And under such circumstances it is immaterial whether any warnings or signals were

given or not. *Lenix v. Railroad*, 76 Mo. 86; *Taylor v. Railroad*, 86 Mo. 457, and cases cited. (3) His duty to look and listen for the approaching cars, was not discharged by looking west, and seeing, as he thought, the train leave the track he was on. So long as he was in a position of danger, it was a continuing duty, on his part, to watch and listen for approaching danger. The plaintiff admits he did not do this, and under the doctrine of the *Kelsay* case, he can not recover. *Kelsay v. Railroad, supra; Hayden v. Railroad, supra; Turner v. Railroad*, 74 Mo. 602. (4) The evidence did not show that Mill street was a street which ran across defendant's tracks, either by adverse user or dedication. The only user shown by the evidence was a permissive one, and not under claim of right. Such user did not, therefore, have the effect of establishing Mill street across the right of way of the defendant. The user was not adverse. *Blanchard v. Moulton*, 63 Maine, 434; *Lanier v. Booth*, 50 Miss. 410; *Pentland v. Keep*, 41 Wis. 490; *Chestnut Hill Co. v. Piper*, 77 Pa. St. 432; *State v. Green*, 41 Iowa, 698; *Green v. Betheu*, 30 Ga. 896; *Talbot v. Grace*, 30 Ind. 389; Elliott on Roads and Streets, pp. 129, 130; Elliott on Roads, etc., p. 136, and authorities cited; *Sheehouse v. State*, 110 Ind. 509; *Railroad v. Parker*, 41 N. J. Eq. 489; *Bloomer v. Ossippee*, 59 N. H. 55; *Bryan v. St. Louis*, 12 Ill. App. 390. It stands admitted by all the plaintiff's evidence, that plaintiff was struck east of the center line of Mill street; he was, therefore, not struck within the line of Mill street, but upon the defendant's private property, and that he was in law a trespasser.

*J. H. Rodes* and *G. W. Barnett* for respondent.

(1) If the plaintiff when struck was upon the street crossing where he had a right to be, he was entitled to

the protection which that fact threw around him, without regard to what his purpose may have been, as to thereafter walking or trespassing upon railroad property. *Winters v. Railroad*, 99 Mo. 517; *Henry v. Railroad*, 113 Mo. 525; *Stringer v. Frost*, 116 Ind. 477. A party upon a public street where same crosses a railroad track is not a trespasser. *Lloyd v. Railroad*, 128 Mo. 595; *Easley v. Railroad*, 113 Mo. 242. (2) It is a question for the jury to determine under proper instructions of the court, whether or not the plaintiff was guilty of contributory negligence. *Kenney v. Railroad*, 105 Mo. 271; *Eichorn v. Railroad*, 130 Mo. 575; *Baker v. Railroad*, 122 Mo. 533; *O'Connor v. Railroad*, 94 Mo. 157; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Stepp v. Railroad*, 85 Mo. 229; *Petty v. Railroad*, 88 Mo. 320; *Baker v. Railroad*, 122 Mo. 533; *Eswin v. Railroad*, 96 Mo. 290; *Kellny v. Railroad*, 101 Mo. 76. The duty to look and listen is not an absolute duty, and is not a prerequisite to the right of recovery, but the standard by which such action or nonaction is measured is the degree of care which should characterize the action of a person of ordinary prudence in the same situation. *Easley v. Railroad*, 113 Mo. 245; *Baker v. Railroad*, 122 Mo. 533; *French v. Railroad*, 116 Mass. 537; *Jennings v. Railroad*, 112 Mo. 268; *Kenney v. Railroad*, 105 Mo. 270; *Guenther v. Railroad*, 108 Mo. 18; *Hilz v. Railroad*, 101 Mo. 36; *Dunkman v. Railroad*, 95 Mo. 232; *Sullivan v. Railroad*, 97 Mo. 119; *Frick v. Railroad*, 75 Mo. 595. (3) The evidence conclusively shows and the jury found that Mill street was a public street, known, opened, and used as such by the public, and recognized by the city and the defendant as a street fifty feet wide across defendant's tracks for more than ten years prior to the injury.

GILL, J.—In July, 1893, the plaintiff was run over and badly injured by two coal cars which were at the time being operated by the defendant in the manner known as a "flying switch," at a point where defendant's tracks cross a public highway known as Mill street, in the city of Sedalia. Plaintiff sued the defendant for damages, charging that his injuries resulted from a negligent handling of the cars by defendant's employees. The answer consisted of a general denial and plea of contributory negligence. At a trial by jury there was a verdict and judgment for plaintiff in the sum of $2,000, and defendant appealed.

The main complaint relates to the court's action in declining to sustain a demurrer to plaintiff's evidence, which tended to prove about this state of facts: Mill street is, and was at the date of plaintiff's misfortune, one of the principal thoroughfares of Sedalia running north and south. Defendant's line of railway crosses the street at right angles, running east and west. At the Mill street crossing there is what is known as the main line, as also several side tracks. At about noon, plaintiff, a plasterer, was on his way from a place on the west side of Mill street to his home east thereof. He came upon Mill street at the railroad crossing, and on the west side of the street. He then walked to about the middle of the street, going east, intending to cross over the tracks and take a path leading through the yards in the direction of his home. At this point, in looking west, plaintiff discovered a short distance off a locomotive approaching the crossing and running on the main track, at which he had then arrived. He stopped for a moment, and watched the motion of the locomotive, and saw it switch or turn off the main track onto one of the

side tracks, and continued looking until he saw the tender follow the engine. Believing then the main track to be clear, the plaintiff moved along a few steps east, waiting for the locomotive and cars, if any attached, to pass him, expecting, as he testified, that he would thereafter resume his direct journey home. While moving these few steps east down the main track his back was to the west and he did not look back until about the instant he was struck by two cars coming up behind him on the main track, and which, as the evidence shows, were running at the rate of about twelve to fifteen miles per hour. These two cars had been attached to the engine and tender which the plaintiff had seen coming down toward him on the main track, but they had been detached while in rapid motion, and the switch so manipulated as to lead the engine and tender off on a side track and then quickly readjusted so as to let the two cars continue at a rapid speed down the main track, which plaintiff had seen the locomotive and tender leave. The plaintiff testified that he never saw these coal cars until about the moment they struck him; that he supposed of course that as the locomotive and tender left the main track any cars attached thereto would be drawn after them, and that there was then no danger in remaining on the main track, which he saw the engine leave.

There was evidence tending to prove that there was a brakeman on the two coal cars and that he and one of the men operating the engine tried to warn the plaintiff of his danger, but the plaintiff testified that he heard no such warning, and from the evidence it would seem probable that he was unable to hear it because of the continued puffing and escape of steam from the locomotive. Admitting, however, that there

was a brakeman on the two cars making the flying switch, it is clear that he did not have them under control, and that they were running at such a rapid speed across Mill street that the brakeman was unable to stop them until they had passed many car lengths beyond the point where plaintiff was injured.

If now the defendant's employees negligently operated the cars and plaintiff was thereby damaged, then he is entitled to recover for such injuries unless he, too, was guilty of negligence which contributed thereto. The first of these propositions is clearly established. While the making of a flying or running switch in the private yards of the railway company may not be regarded as a movement of great danger, yet the courts have uniformly condemned it as a most reckless performance when indulged in at a public crossing, where people are accustomed to pass. It is considered negligence of a most aggravated character. Beach on Contributory Negligence [2 Ed.], sec. 217; *Baker v. Railroad*, 122 Mo. 533; *O'Connor v. Railroad*, 94 Mo. 150; *Railroad v. Converse*, 139 U. S. 469; *Ferguson v. Railroad*, 63 Wis. 145; *Brown v. Railroad*, 32 N. Y. 597.

The defendant company seems to have so recognized the dangers attending a flying switch, and by rule 21 for the government of its employees it was expressly prohibited. At the trial of this case, however, it was contended, and evidence to that effect introduced, that the rule did not apply to the yard service; that flying switches were there necessary to the rapid and convenient performance of the work, etc. As to what was intended by the railroad company in adopting the rule is of no consequence in determining whether or not a flying switch, under the circumstances of this case, was or was not negligence. The company will not be permitted to declare what shall or

shall not be negligence in the operation of its trains across public highways. Nor will it be excused from the results of its negligent acts by considerations of mere convenience or the more rapid making up of its trains in and about these crossings. As said by Judge BLACK in the *Baker* case, "the right of the public to use the highway is equal to that of the defendant, and the defendant is in duty bound to manage the movement of its cars accordingly."

Conceding, then, that defendant is rightly charged with negligence in the manner in which these two cars were cut loose and sent at a rapid, uncontrolled, and *uncontrollable* rate of speed across Mill street, is the plaintiff denied the right of recovery because of negligence on his part? For the rule is well settled that even though the railway company may have been careless, yet if the party injured was likewise wanting in ordinary care, and that there would have been no damage if such ordinary care had been exercised by him, then plaintiff can have no relief. The general rule is, that this matter of contributory negligence is left for the determination of a jury, and the burden of establishing such want of due care on the plaintiff's part rests on the defendant. However, on such issues, as in all others, if the evidence clearly and without dispute proves that the traveler in passing over the highway failed to exercise the care of an ordinarily prudent man, the court will peremptorily direct a verdict for defendant. And the general rule is, that when a person approaches the railroad crossing he must, before venturing to pass, look and listen for the locomotive and cars, and this duty continues until the dangerous locality is passed. If he clearly fails in this, and is injured, the court ought to tell the jury that he can not recover. But the foregoing rule, while general, is not without qualification. Instances may and do

arise, and circumstances do and will exist, where it would be improper to say that the plaintiff's failure to look and listen (and to continue so to do until the crossing is passed) will hold him to be negligent as matter of law. This exception to the apparently arbitrary rule we are discussing was recognized in *Baker v. Railroad, supra.* In the opinion, Beach on Cont. Neg., sec. 195 [2 Ed.], is cited, where the author quotes this apt language of the Iowa supreme court: "If the view of the railroad, as the crossing is approached upon the highway, is obstructed by any means so as to render it impossible or difficult to learn of the approach of a train, *or there are complicating circumstances calculated to deceive or throw a person off his guard,* then whether it was negligence on the part of the plaintiff, or the person injured, under the particular circumstances of the case, is a question of fact for the jury."

In a case somewhat similar to this (*Ferguson v. Railroad, supra*), the supreme court of Wisconsin says: "The jury may well have found from the testimony that the noise of the car on the track was drowned by that made by the passing engine; that when he stepped upon the track he was so enveloped in smoke and steam from the engine that he could not see the approaching car; and that he did not know or have any reason to suspect that a running switch was being made. Under these circumstances it would be manifestly unjust to apply to the plaintiff, the rule above stated in all its rigor," and the court held it proper to submit the question of contributory negligence to the jury. Another instructive case will be found in that of *French v. Railroad,* 116 Mass. 537. Also *Brown v. Railroad, supra,* and *Railroad v. Converse, supra.*

Considering now the facts of this case in the light of the foregoing, we are of the opinion that the trial court properly refused the instruction in the nature of

a demurrer to plaintiff's evidence, and that the court correctly submitted the defense of contributory negligence to the jury. An ordinarily prudent man might well have thought, as the plaintiff says he did, that when the engine and tender passed off on a side track and left the track on which he, the plaintiff, was standing, that he had nothing further to fear if he continued to walk thereon. It was at least a question for the jury to determine whether or not an ordinarily prudent man would have conducted himself as plaintiff did. While the plaintiff did not look west within the few seconds after he saw the engine and tender leave the main track on which he was standing, it was still a question for the jury whether or not he acted in an ordinarily cautious and prudent manner in the light of circumstances which might tend to deceive or mislead him.

There appears to have been some controversy at the trial as to whether or not Mill street, where it crosses the railway tracks, was an established highway, properly dedicated and condemned. The jury were, however, instructed that if they found from the evidence that Mill street, where it crosses the defendant's tracks, and for some distance north and south thereof, was then, and had been for more than ten years prior to plaintiff's injury, "open, known, and recognized by the city of Sedalia to the public and this defendant as a street fifty feet wide, and for that period had been used and traveled by the public as such, then for the purpose of this case the same is to be taken and treated as a street fifty feet wide where the same crosses defendant's tracks." The jury, in giving plaintiff a verdict, found the existence of the foregoing facts, and this ends that controversy. And it is difficult to see how they could have found otherwise. The street as such had been long used and recognized by everybody

and without question.    The defendant at all times, and for many years, treated the street as a highway and had at that point a watchman or flagman to protect the traveling public and its trains while passing over the · crossing.

There was also some dispute and conflict of evidence as to whether or not the plaintiff was when struck by the cars within the lines of said Mill street. This issue of fact was also fairly and properly submitted to the jury, and in view of the verdict passing on that and other issues, it is not here an open question.

That plaintiff intended when passing over the street crossing to go upon defendant's right of way (outside of crossing) and thence over its private yards to his, plaintiff's, dwelling, can have no bearing on the merits of the case. He had an undoubted right to pass over the street crossing whether thereafter intending to go east, west, north, or south.    The material question is, was he at the time he was run over by the cars within the limits of the street crossing.    What course, or over what property, he intended subsequently to travel was wholly immaterial.

We notice some further complaints as to the court's action in giving and refusing instructions, but in none of them do we find any error.    The court was, in declaring the law, exceedingly liberal toward the defendant.    The instructions, viewed as an entire charge, are clear and unambiguous, and correctly submitted every issue involved in the case.

Discovering no substantial error, the judgment will be affirmed.    All concur.