GEORGE LANG, Respondent, v. THE MISSOURI
PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, December 4, 1905, and January 8,
1906.

1. **RAILROADS: Negligence: Wild Car: Instructions.** To permit
   a coal car, with no one in control, to move without warning to-
   ward a highway crossing where there is no flagman, is negli-
   gence *per se*, and the instruction may so assume.

2. ———: **Pleading: Evidence: Variance.** A review of the evi-
   dence leads to the conclusion that the proof sustained the al-
   legations of the petition that plaintiff was thrown into the air
   and fell with great force and violence, etc.

3. ———: ———: ———: ———: **Physical Facts.** Courts should
   not indulge in arbitrary deductions from physical law and fact
   except when they appear to be so great and irrefutable that no
   room is left for entertainment by reasonable minds of any other.

4. ———: **Negligence: Crossing: Care.** A railroad crossing is a
   danger signal to trainmen and individuals on the highway, as
   each must anticipate the presence of the other at any time;
   and although the former be negligent the traveler cannot re-
   cover if he himself is guilty of culpable negligence; but he is
   not required to anticipate that the trainmen will handle the
   cars in a negligent manner, but may assume that proper sig-
   nals will be given and is only required to exercise reasonable
   care.

5. ———: ———: ———: ———. Where the traveler is sur-
   rounded by obstacles interfering with seeing and hearing, he
   should inform himself even to the point of walking ahead to the
   track before attempting to drive upon it.

6. ———: ———: ———: ———: **Jury Question.** Under the facts,
   *held* that the contributory negligence of the traveler was prop-
   erly submitted to the jury.

7. ———: ———: ———: ———: ———: **Perilous Situation.** The
   law imposes no rules of conduct upon one who is forced as he
   may to escape from impending danger that threatens him with
   great bodily harm, and his entire conduct under the circum-
   stances is for the jury.

8. **TRIAL PRACTICE: Instructions: Covered in Other Instruc-
   tions.** Instructions embodied in other instructions are prop-
   erly refused.

Appeal from Cooper Circuit Court.—*Hon James E. Hazell*, Judge.

AFFIRMED.

*Martin L. Clardy* and *John Cashman* for appellant.

(1) The petition charges that, "by the force of the collision of said car with his said wagon, plaintiff was thrown several feet in the air, and fell with great force and violence," etc. The proof was that he had reasonable cause to apprehend a collision and that the danger thereof was, and that he believed it was, imminent and impending, and to save himself he jumped and was injured. This proof was a positive contradiction of the charges made in plaintiff's petition. Bond v. Railway, 110 Mo. App. 131; Chitty v. Railway, 148 Mo. 64; Hecker v. Railway, 110 Mo. App. 162; Breeden v. Big Circle Mining Co., 103 Mo. App. 176; Farr v. Express Co., 100 Mo. App. 574; Garvin v. Railway 100 Mo. App. 620; Mason v. Railway, 75 Mo. App. 9; Phleger v. Weltner, 21 Mo. App. 580; Raming v. Railway, 157 Mo. 477; Milling Co. v. Transit Co., 122 Mo. 258; Yarnell v. Railway, 113 Mo. 570; Harty v. Railway, 95 Mo. 368; Mitchell v. Railroad, 108 Mo. App. 142. (2) The plaintiff is undertaking to count upon one cause of action and recover upon another. This can not be done, notwithstanding the other would be a good cause of action if pleaded. This is particularly true if proof of the unpleaded matter necessarily negatives the existence of the facts pleaded. Chetby v. Railway, 148 Mo. 64; Hains v. Pearson, 100 Mo. App. 551; Farr v. Express Co., 100 Mo. App. 574; Bond v. Railway, 110 Mo. App. 131; Raming v. Railway, 157 Mo. 477. (3) These physical facts would control even without his repeated admissions that he jumped, or as against any statements in his testimony to the contrary. Barrie v. Transit Co., 102 Mo. App. 87; Kreis v. Railway, 148 Mo. 330; Ferguson et al. v. Transit Co.,

79 Mo. App. 360; Payne v. Railroad, 136 Mo. 562; Feary v. Railway, 162 Mo. 75; Sepetowski v. Transit Co., 102 Mo. App. 110; Breeden v. Mining Co., 103 Mo. App. 179. (4) The plaintiff was guilty of the grossest contributory negligence. According to his own testimony he never turned an eye to the south from the time he looked above the elevator and saw the engine and smoke. He then turned his oblivious gaze either straight ahead or to the north. In this way he came to the east track, never looked; got upon it, never looked; crossed it, never looked; got between it and the main track, never looked; got upon the main track and then for the first time, when the car was nearly upon him, he turned his view to the south, saw it and tried to escape. Under this evidence the court should have directed a verdict for defendant as asked. Jones v. Barnard, 63 Mo. App. 501; Hixson v. Railroad, 80 Mo. 335; Butts v. Railroad, 98 Mo. 272; Drake v. Railway, 51 Mo. App. 562; Teduke v. Railway, 4 Mo. App. 485; Hook v. Railway, 162 Mo. 569; Holwerson v. Railway, 157 Mo. 216; Tanner v. Railway, 161 Mo. 510; Peterson v. Railway, 156 Mo. 552; Maxey v. Railway, 113 Mo. 1; Guyer v. Railway, 174 Mo. 344; Harlin v. Railway, 64 Mo. 480; Fletcher v. Railroad, 64 Mo. 484; Moody v. Railway, 68 Mo. 470; Rains v. Railway, 71 Mo. 164; Zimmerman v. Railway, 71 Mo. 476; Henze v. Railway, 71 Mo. 636; Purl v. Railway, 72 Mo. 168; Stepp v. Railway, 85 Mo. 229; Turner v. Railway, 74 Mo. 602; Kelly v. Railway, 75 Mo. 138; Hayden v. Railway, 124 Mo. 566. (5) For the purpose of determining the questions involved in this appeal it may be conceded that defendant's servants in charge of the car were negligent, still the plaintiff's negligence concurring, he can not recover. There is no comparative negligence in this State. Hogan v. Railway, 150 Mo. 55; Welch v. McAlester, 13 Mo. App. 89; Markowitz v. Railway, 186 Mo. 350; Reis v. Transit Co., 179 Mo. 1; Sepetowski v. Transit Co., 102 Mo. App. 110; Barrie v. Transit Co., 102 Mo. App. 87; Harlin v. Rail-

way, 64 Mo. 480; Rains v. Railway, 71 Mo. 164; Hayden v. Railway, 124 Mo. 566; Kelsay v. Railway, 129 Mo. 362; Corcoran v. Railroad, 105 Mo. 399; Zumalt v. Railway, 175 Mo. 288; Watson v. Railway, 133 Mo. 251; Moore v. Railway, 176 Mo. 528. (6) As the surroundings became less favorable to look, the law demands a correspondingly increased degree of caution, and if this goes to the extent of leaving the only reasonably safe thing to do, to stop and find if the course is safe, then the traveler must stop. Hook v. Railway, 162 Mo. 569; Weller v. Railway, 120 Mo. 635; Zimmerman v. Railway, 71 Mo. 476; Henze v. Railway, 71 Mo. 636; Hayden v. Railway, 124 Mo. 566; Jones v. Barnard, 63 Mo. App. 501; Kelsay v. Railway, 129 Mo. 362. This rule obtains in other jurisdictions also. Myers v. Railway, 24 Atl. 747; Moreland v. Railroad, 16 Atl. 623; Artz v. Railroad, 56 N. W. 603; Butts v. Railway, 98 Mo. 272; Yancey v. Railway, 93 Mo. 433; Drain v. Railway, 10 Mo. App. 531.

*John Cosgrove* for respondent.

(1) Plaintiff's instructions were properly given. The first states the law as declared in Pinney v. Railway, 71 Mo. App. 578; O'Connor v. Railway, 94 Mo. 150. (2) Plaintiff's second instruction is as favorable, if not more favorable to defendant than the law and the evidence warrant. The defendant's act in "kicking" or "shunting" a car across a publicly traveled street, under the circumstances detailed in evidence, was unlawful and grossly negligent. Elliott v. Railway, 105 Mo. App. 523; Donohoe v. Railway, 91 Mo. 357. (3) "Wild," "loose," "kicked," and "shunted" cars are synonymous terms. It was not running on schedule and was a "wild" car. An engine not running on schedule time is said to be running "wild." 30 Am. and Eng. Ency. Law (2 Ed.), p. 524; Simpson v. Railway, 5 N.

Y. App. Div. 615. (4) Plaintiff's third instruction correctly covers the law on that branch of the case. Hestor v. Fidelity & Casualty Co., 78 Mo. App. 505; Hartpence v. Rogers, 143 Mo. 634 l. c.. (5) Plaintiff's fourth and fifth instructions are not criticized in defendant's brief. They are sustained by authority. Trust Co. v. Hodges, 90 Mo. App. 555; Pinney .v. Railway, 71 Mo. App. 578. (6) Plaintiff's sixth instruction, in substance, told the jury that the plaintiff had a right to presume that defendant would not "kick" or "shunt" its car, free from restraint, and without warning, across a publicly traveled street. Such action by defendant's servants was negligence per se. Brown v. Railway, 32 N. Y. 597 (88 Am. Dec. 353) ; Stevens v. Railway, 67 Mo. App. 362; Baker v. Railway, 147 Mo. 140, and cas. cit. (7) In the absence of evidence to the contrary, plaintiff will be presumed to have been in the exercise of due care. Buesching v. Gas Light Co., 73 Mo. 219; Flynn v. Railway, 78 Mo. 195; Weller v. Railway, 120 Mo. 650; Crumpley v. Railway, 111 Mo. 152; Elliott v. Railway, 105 Mo. App. 523; Meng v. Railway, 108 Mo. App. 559-561, and cas. cit; Esler v. Railway, 109 Mo. App. 580; Bond v. Railway, 110 Mo. App. 136. (8) The allegations of the petition are amply supported by the evidence. R. S. 1899, sec. 655; Leslie v. Railway, 88 Mo. 50; Real Estate Co. v. Realty Co., 159 Mo. 562; White v. Gilleland, 93 Mo. App. 310, and cas. cit.; Rumbolz v. Bennett, 86 Mo. App. 174. (9) The judgment is for the right party. No error materially affecting the merits was committed by the trial court, and the judgment should be affirmed. R. S. 1899, sec. 865; Cass County v. Bank, 157 Mo. 133; Jones v. Brownlee, 161 Mo. 258; Wagner v. Illuminating Co., 82 Mo. App. 287; Link v. Prufrock, 85 Mo. App. 618; Redman v. Adams, 165 Mo. 60.

JOHNSON, J.—This is an action to recover damages for personal injuries sustained by plaintiff at the crossing of a public street and defendant's railroad tracks in the city of Boonville. Plaintiff had judgment in the sum of three thousand dollars and defendant appealed.

The facts disclosed by the evidence introduced by plaintiff are as follows: Plaintiff, a farmer living six or seven miles west of Boonville, while on his way home, was driving a team attached to an ordinary farm wagon and at the time of the occurrence in question was standing near the front end of the wagonbed. His position placed him some fifteen feet distant from the end of the tongue. In driving westward on Spring street, it was necessary for him to cross three tracks of defendant's road. These tracks ran north and south and intersected the street at right angle. East of the east track and on the south side of the street was a grain elevator, and directly across on the north side of the street was another elevator. The east track ran close to both elevators and served as a loading track for them. A box car was standing on this track at the northwest corner of the south-side elevator and extended some six or eight feet into the street. The street declined from the east to the crossing. East of the elevator, there was an open space which afforded a view to one approaching from the east of the tracks extending to the south except the portion of them obscured by the elevator building. When he reached this point of view, plaintiff looked to the south and saw the smoke from an engine several hundred yards away and from his observation rightly concluded that the engine was not approaching the crossing. He continued on slowly and cautiously, looked both to the right and left, and listened for the approach of trains or cars. His wagon was almost new and made but little noise. Just before the crossing was reached, he checked his team, but did not come to a full stop. He saw and heard

nothing to warn him of approaching danger and proceeded looking towards the south. The center and main track was twelve feet distant from the east track and it is asserted that plaintiff, because of the interference of the elevator and box car, could not include it within his range of vision until he passed from behind the car. Consequently, although he was looking towards the south, he did not become aware of the approach of the car that ran him down until his horses' front feet had entered upon the main track. At that moment, he saw coming from the south on the main track an open coal car, which was running at the rate of five or six miles per hour. It was unattached and unaccompanied by any servant of defendant and had been set in motion, in the process of switching, several hundred yards south of the street, and permitted by defendant's servants to run uncontrolled. No servant of defendant was stationed at the crossing to give warning of its approach. When plaintiff caught sight of the car, he vigorously whipped his horses with the lines in an effort to escape by going across and then, moved by fear of a collision, ran to the back end of the wagonbed with the intent of jumping to the ground. As he started to jump, the car struck the rear end of the wagon and plaintiff was thrown out and fell to the ground to the east of the track, far enough to miss the passing car. The wagon was pushed around to the west, but the violence of the impact was sufficient to demolish it and tear it loose from the team. Plaintiff was severely injured, but, as no point is made that the verdict is excessive, it is unnecessary to state his injuries.

On the part of the defendant, the evidence goes to show that plaintiff could have seen and did see the approaching car before he reached a place of danger and attempted to "run" the crossing; that the car was not "kicked" or "shunted," that is, was not set in motion by the engine and then detached to travel forward, but was given "slack" to start it and then gained headway by

force of gravity, the track being down grade towards the crossing.

In the view we take of the case, notwithstanding the allegation in the petition that the car was "kicked" or "shunted," it is immaterial whether it was given headway by that operation or was started in the manner claimed by defendant. The means of propulsion used do not enter into the question of negligence. The determinative fact is that the servants of defendant, by any process, started the car in motion, and sent it over the crossing without warning and without any means of control. This fact is admitted by defendant and its negligence thereby confessed. It is so well settled in this State that it is negligence *per se* to move cars in this manner over public crossings that it is not required of us to discuss the subject. [Pinney v. Railway, 71 Mo. App. 577; O'Connor v. Railway, 94 Mo. 150; Baker v. Railroad, 122 Mo. 533; Baker v. Railroad, 147 Mo. 140; Stevens v. Railway, 67 Mo. App. 356.] This disposes of the criticism that the court, in one of the instructions given on behalf of plaintiff, assumed, as proven, the fact of the negligence of defendant.

Defendant asked for an instruction in the nature of a demurrer to the evidence and complains of the action of the trial court in refusing it, assigning two grounds in support of its position: first, a total failure of proof of the allegations of the petition; and, second, that the contributory negligence of plaintiff should be assumed as a matter of law.

As to the first, the petition alleges that "by the force of the collision of the said car with his said wagon, plaintiff was thrown several feet into the air and fell with great force and violence, head foremost, to the ground, etc." It is insisted that plaintiff himself admits he was not thrown from the wagon by the impact, but jumped before it occurred and in anticipation of it, from which defendant argues that there is a complete depar-

ture from the constitutive fact alleged and that proven. This contention may be fully answered by saying that the record abounds with evidence that plaintiff was intercepted by the collision before he could leap and was thrown out by the force of the blow. Plaintiff, because of his foreign training, is unskilled in the use of the English language, and some of his isolated expressions appear to lend color to defendant's interpretation, but, considering his testimony as a whole, we do not understand that he intended to convey the impression that he jumped before the collision occurred. Other witnesses negatived this idea—among them, one introduced by defendant, an eyewitness, who quite emphatically declared plaintiff did not jump, but was projected by the impact. Defendant urges upon us the physical impossibility of plaintiff falling where he did had he been thrown by the collision. It is true the team and front end of the wagon had passed over the track and the rear end of the wagon alone was struck, but we are not prepared to declare as a matter of law that plaintiff could not have fallen eastwardly a sufficient distance to clear the oncoming car. Just what direction would be given his flight through the air by the meeting of the force of the impact coming from the south and that of his own inertia eastward, acquired by his hasty effort to leave the wagon, is a problem in physics, beyond the pale of judicial cognizance. It probably would be influenced by the weight and rate of speed respectively of man, car, and wagon. So frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other. We conclude that the proof sustained the facts alleged.

Relative to the second point, we are urged to declare that in law plaintiff, under his own evidence, was

guilty of negligence directly contributing to his injury and therefore was not entitled to have the issue involving the degree of care exercised by him submitted to the jury as one of fact. The presence of a railroad crossing is, of itself, a danger signal, both to persons using the public highway and those operating trains upon the railroad. Each class of persons is bound to anticipate the presence of the other at the crossing at any time. Those operating trains must give warning of their approach and those using the highway must be alert in the use of their senses to guard their crossing from danger. The failure of either to observe these precautions is negligence. We have found that defendant was negligent in sending the car over the crossing without warning, so that our whole concern is with the classification of plaintiff's conduct, for, if he was negligent in his manner of approaching the crossing, he cannot recover, however culpable defendant may have been. [Jones v. Barnard, 63 Mo. App. 501; Butts v. Railroad, 98 Mo. 272; Drake v. Railroad, 51 Mo. App. 562; Tanner v. Railroad, 161 Mo. 497.] Although plaintiff was bound to be attentive to use his eyes and ears to learn of approaching danger, he was not required to anticipate that defendant would operate its engine and cars in a negligent manner. He had a right to assume that defendant would not turn loose a car to run wild and that it would give warning of the approach of any of its trains or cars. [Baker v. Railroad, 147 Mo. 140; Elliott v. Railroad, 105 Mo. App. 523; Weller v. Railway, 120 Mo. 635.] Therefore, the degree of care required of him was that which a reasonably careful and prudent person would have exercised to avoid the dangers incident to a proper operation of trains and cars upon the tracks. [Pinney v. Railway, supra.]

Where obstructions exclude a view of the tracks, a person approaching the crossing is not necessarily compelled, in order to satisfy the requirements of reasonable care, to leave his vehicle and go forward to the track

to convince himself by visual inspection that no danger is approaching. If he is in a position to hear the signals which he has the right to expect will be given, and, listening, hears none and advances slowly and attentively, for the court to hold him blameworthy for not going forward on foot and looking from where the tracks may be seen, would be imposing upon him the duty to observe extraordinary care, that is, to take precautions not deemed necessary by ordinarily prudent persons. [Donohue v. Railway, 91 Mo. 357; Baker v. Railroad, 122 Mo. 533.] There are cases that call for such conduct as an act of reasonable care. When a person, in driving to a crossing, is surrounded by obstacles and conditions that prevent him from either seeing an approaching train or car, or from hearing signals, then he must do all that is necessary to inform himself of the situation, even to the point of walking to the track that he may see if his way is threatened.

Tested by these principles, the characterization of plaintiff's conduct was a question of fact for the jury. After leaving the open space east of the elevator, he could not see the track until his team entered into the sphere of danger, but, according to his evidence, he could have heard signals or warnings and was listening for them. After he passed beyond the obstruction to his sight caused by the presence of the elevator, he could have seen over the top of the stationary box car, before he entered into danger, the top of an engine or box cars moving on the main track, and he was looking in that direction. He could neither see nor hear the stealthy approach of the coal car. It was wrongfully there through defendant's negligence, and to charge him with constructive knowledge of its presence would be a gross injustice.

It has been suggested that, as plaintiff was not himself in danger when he first observed the car, it was negligence for him to attempt to whip his team over the

crossing; that the safer course would have been to back the team out of danger. The horses had their front feet on the track and therefore were in danger, not only from a collision, but from fright. It cannot be assumed that plaintiff himself was not then in imminent danger. With the car only ten or fifteen feet away and bearing down on the team at the rate of five or six miles per hour, and the team then in forward motion, he could not well foresee the consequences likely to follow an attempt to stop and back them. Any course he might pursue seemed fraught with danger to him. Moreover, the sudden surprise that brought to him a realization of danger naturally would serve to confuse him and cause him to act by impluse rather than from reason. The law imposes no rules of conduct upon one, who is forced to escape as he may from impending danger, that threatens him with great bodily harm. The instinct of self-preservation in such cases often destroys judgment and impels men, who ordinarily are careful and prudent, to conduct themselves with extraordinary recklessness. Plaintiff, evidently, was laboring under great excitement and, if we felt constrained to say (which we do not) that he acted unwisely in attempting to cross, we would not hold him at fault in law for what he did under stress of truculent danger. [Donohue v. Railway, supra, l. c. 364.] We think it was proper to let the jury pass upon his entire conduct and that no error was committed in overruling the demurrer to the evidence. [Pinney v. Railway, supra; Stevens v. Railway, supra.]

The views expressed answer the questions raised relative to the giving and refusing of instructions. The law was correctly declared in those given. Instruction number eleven asked by defendant contained a declaration of law embodied in other instructions given on behalf of defendant and, therefore, was properly refused. The case was fairly tried and submitted, and the judgment is affirmed. All concur.